IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| SUSAN H. BLAKE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:11-cv-242-MEF |
| v. ) | (WO—Publish) |
| ) | |
| BANK OF AMERICA, N.A., et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This cause comes before the Court on the Motion to Dismiss (Doc. # 4) filed by the defendants, Bank of America, N.A. ("BANA") and BAC Home Loans Servicing, L.P. ("BAC"). They contend that the plaintiff, Susan Blake, has failed to state a valid claim in any of the counts in her complaint. Blake agrees that her claim for injunctive relief should fail, but contends that she has alleged sufficient facts for her other claims to survive the defendants' motion. After careful consideration of the parties' arguments and the relevant law, the Court finds that BANA and BAC's motion is due to be GRANTED IN PART and DENIED IN PART as set out below.

**II. JURISDICTION AND VENUE**

The Court has subject-matter jurisdiction over this case under 28 U.S.C. § 1332(a). (*See* Doc. # 23 (denying remand motion and finding Court has subject-matter

1

jurisdiction).) The parties do not contend that the Court lacks personal jurisdiction over them, nor do they dispute that venue is proper.

### III. LEGAL STANDARD

A motion to dismiss mainly tests the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). It does not delve into disputes over the proof of the facts alleged—such a crucible is reserved for the summary judgment stage. With this in mind, the Court accepts as true all well-pled factual allegations in the complaint, viewing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). And while a court typically keeps its motion to dismiss inquiry within the four corners of the complaint, the Court may nonetheless consider an outside document when it is undisputed and central to the plaintiff's claims. *Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1379–80 (11th Cir. 2010). The Court will grant a motion to dismiss "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Ed. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

A motion to dismiss also requires compliance with some minimal pleading standards. Indeed, although a plaintiff's complaint generally need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), the plaintiff must still allege "enough facts to state a claim to relief that is

plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007). And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). The plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 559. Nor does it suffice if the pleadings merely leave "open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." *Id.* at 561.

## IV. BACKGROUND[1]

Susan Blake bought her home like most people do: by executing a promissory note and granting a mortgage on the home to secure her repayment obligation. Blake chose Auburn Bank as her initial lender in 1997. Nine years later, she refinanced her home with Countrywide Home Loans ("Countrywide"). Blake experienced significant financial hardship about three years after that, and in August of 2008, she contacted Best Interest Mortgage Company ("Best Interest") to help her modify her agreement with Countrywide. At this point, Best Interest charged her $1,500, agreed to provide loan modification services, and told Blake not to contact or pay her lender while the company took steps to arrange the loan modification. Meanwhile, BANA assumed Countrywide's assets and liabilities after the two merged.

---

[1] The Court has taken the facts from the complaint and accepts them as true for present purposes.

Blake followed the advice about not paying her loan, and about three months later, Best Interest told her that she qualified for a modification and that she should expect to receive some paperwork to sign to complete the process. When the paperwork did not arrive on time, Blake called Best Interest who, in turn, called BANA. The bank responded by telling Blake that it had her modification application under review and would contact her shortly.

Six months passed before Blake heard about the situation again. She received a letter from BANA giving her notice of its intent to accelerate; the letter also informed her that she had options available to her for repayment plans or loan modification. BANA contacted her again the next month, informing her that it planned to talk to Best Interest about her mortgage. A letter from BAC followed a few weeks after that, telling her that BAC had become the servicer of her mortgage.

After another long stretch without hearing from anyone, Blake was informed that she had to start making trial payments of $991.69. She was told that doing so for three months would allow her to refinance her loan at a monthly rate of $991.69. But either BAC or BANA ended up telling her she could not refinance her home at this rate.[2] And eventually BANA told Blake that it would not consider her for a loan modification. This lead to Either BAC or BANA repeatedly contacting Blake with foreclosure threats.

Blake filed suit shortly after receiving this news, suing BANA, Countrywide, Best

---

[2] The lender applied the $991.69 monthly payments to the outstanding balance on Blake's mortgage.

Interest, BAC, and a number of fictitious defendants in the Circuit Court of Lee County, Alabama. Her complaint contains a request for injunctive relief and four substantive counts requesting damages. The Court will address each claim in turn.

## V. DISCUSSION

### A. Blake's request for injunctive relief

Blake's complaint contains a section entitled "Affirmative Defenses to the Delinquency of the Mortgage Loan Account and Possible Foreclosure." (Doc. # 1-10.) Although Blake does not specifically ask for an injunction, this section claims that the defendants do not have standing to initiate a foreclosure. The defendants have treated this section as a request for injunctive relief and now seek to have the claim dismissed. Because Blake agrees with the defendants that any "claims for injunctive relief related to a potential foreclosure are not ripe," (Doc. # 27), the issue is now moot and the claim is due to be dismissed.

### B. Blake's negligent and wanton mortgage servicing claims

Blake's first substantive count alleges negligent mortgage servicing on the part of BAC. The second count claims BAC serviced her mortgage wantonly. She asserts the bank owed her a fiduciary duty to collect and distribute payments properly and to debit and credit her account correctly. And she contends BAC breached this duty by assessing illegal fees and failing to service the mortgage in a commercially reasonable manner. The defendants' response focuses on whether or not Alabama law recognizes a cause of

action for negligent or wanton mortgage servicing. They argue that it does not, or, alternatively, that even if Alabama law recognizes such a claim, Blake's complaint failed to state one.

Alabama does not recognize a tort-like cause of action for the breach of a duty created by contract. Indeed, "a negligent failure to perform a contract . . . is but a breach of the contract." *Vines v. Crescent Transit Co.*, 85 So. 2d 436, 440 (Ala. 1956); *see also Barber v. Business Prods. Ctr.*, 677 So. 2d 223, 228 (Ala. 1996) ("a mere failure to perform a contractual obligation is not a tort"); *Am. Dist. Tel. Co. of Ala. v. Roberts & Son*, 122 So. 837, 840 (Ala. 1929) (holding plaintiff cannot maintain tort action where alleged negligence consists of failure to perform a contractual obligation). A plaintiff can only sue in tort when a defendant breaches the duty of reasonable care—the duty one owes to another in his day-to-day affairs—when such a breach causes personal injury or property damage. *Vines*, 85 So. at 440.

Here, Blake's complaint alleges that BAC, as mortgage servicer, undertook a duty to collect payments and to debit and credit her mortgage account properly. She claims that BAC's failure to perform this obligation led to payments being misapplied and fees being charged to her account. So these allegations raise the questions: from where did this duty arise? Was it created by a contract? Or does a reasonable person owe a similar duty to another in his or her day-to-day affairs?

The repayment and servicing obligations at issue here stem from the mortgage and

promissory note executed by the parties, not from the duty of reasonable care generally owed to members of the public. (*See* Compl. at ¶ 6 ("The action is brought to enforce the *contractual* remedies allowed in the mortgage document." (emphasis added).) Blake attempts to overcome this by claiming that she can sue BAC in tort since she only had an agreement with BANA. But this argument falls flat.

BANA's decision to employ BAC to act as an agent to service Blake's mortgage does not mean that BAC exposed itself to tort liability. This is true even though the Court credits Blake's claim that BAC breached the contract's terms while acting as BANA's agent. Under Alabama law, an agent, like BAC, could only incur tort liability while servicing a mortgage by causing personal injury or property damage as a result of a breach of the duty of reasonable care.[3] Pure economic loss—which is what Blake claims—does not suffice. *See Restatement (Second) of Agency* § 357 (1958) ("An agent who intentionally or negligently fails to perform duties to his principal is not thereby liable to a person whose economic interests are thereby harmed.").[4]

In sum, because Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing, and since an agent does not incur tort liability for

---

[3] For example, say the agreement between Blake and BANA allowed BANA to inspect the home from time-to-time. If BANA hired BAC to undertake the inspections and BAC acted unreasonably while performing this task, Blake could recover in tort for any personal injuries or property damages stemming from BAC's breach.

[4] In *Howe v. Bishop*, the Alabama Supreme Court adopted the *Restatement* rule, recognizing the distinction between economic damages, which do not give rise to a tort duty, and physical injuries, which do. 446 So. 2d 11 (Ala. 1984).

economic harm to a third party that stems from breaching a duty owed to his principal, "no construction of the factual allegations will support the cause of action." *Marshall Cnty.*, 992 F.2d at 1174. Accordingly, the first and second substantive counts are due to be dismissed.

### C. Blake's breach of contract claim

Blake's third substantive count asserts a breach of contract. The pleadings leave much to be desired, but it looks like Blake asserts two breaches. First, Blake, by reincorporating her earlier allegations, contends that BANA and BAC improperly serviced her mortgage by adding unauthorized charges and failing to account for her payments correctly after the parties entered into a loan modification that would have reduced her loans payments from $1,345.73 to $991.69 per month. Second, she claims that the defendants securitized her loan and executed a Pooling and Service Agreement ("PSA"). According to Blake, she is a third-party beneficiary to the PSA. From there she claims the mortgage servicer had to engage in loss mitigation on her outstanding loan—a duty she claims the servicer breached.

BANA and BAC argue that Blake's falling behind on her mortgage bars her first breach of contract claim. They respond to the third-party beneficiary claim by stating that they did not enter into the PSA for Blake's benefit but instead for their own, which makes her an incidental beneficiary who lacks standing to assert a breach of contract. The Court will address each argument in turn.

**1. First party breach of contract**

Alabama law requires a party suing for breach of contract to show either her fidelity to the terms of the contract during performance or that she has a legitimate excuse for her nonperformance. *See, e.g.*, *Walker v. Harris*, 179 So. 213 (Ala. 1938). A party's failure to make this showing means the party who commits a material breach cannot then use the contract to hold the other party liable for a later breach. *See, e.g.*, *Gray v. Reynolds*, 554 So. 79, 82 (Ala. 1989); *Thomas v. Smoot*, 56 So. 1 (Ala. Civ. App. 1911). Here, the defendants claim that, because Blake admitted to defaulting on her payment obligations (*see* Compl. ¶¶ 11, 18), she has no basis for asserting a claim for breach of contract. They prop up this argument by contending that the purported loan modification—which would have allowed Blake to pay $991.69 instead of the $1,345.73 per month called for in the promissory note—violates Alabama's Statute of Frauds.

The loan modification issue presents a close question. Under Alabama law, "[e]very agreement or commitment to lend money, delay or forbear payment thereof or to modify the provision of such an agreement or commitment" is invalid "unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party." Ala. Code. § 8-9-2(7). The writing memorializing a modification or forbearance must, therefore, "state the full terms of the agreement to forbear, the mutuality of the agreement, and the intention of the parties." *DeVenney v. Hill*, 918 So. 2d 106, 115 (Ala. 2005).

9

Here, Blake's complaint alleges she employed Best Interest to seek a loan modification on her behalf. She also claims that Best Interest submitted paperwork to BANA to cement the agreement; that BANA notified her by writing of its ongoing negotiations with Best Interest; and that she was later informed that her loan would be refinanced at $991.69 per month after making three trial payments in that amount.[5] Because the Court takes these allegations as true and views them in the light most favorable to Blake, it is reasonable to infer that the parties memorialized the loan modification agreement in a writing that satisfies Alabama's Statute of Frauds. Thus, Blake has adequately pled a breach of contract claim based on a valid loan modification. Accordingly, the defendants' motion to dismiss that claim is due to be denied.

### 2. Third-party beneficiary breach of contract

"It is well-settled law that 'one not a party to, or in privity with a contract, cannot sue for its breach.'" *Dunning v. New England Life Ins. Co.*, 890 So. 2d 92, 97 (Ala. 2003) (quoting *Twine v. Liberty Nat'l Life Ins. Co.*, 311 So. 2d 299, 305 (1975)). In other words, "a third person has no rights under a contract between others." *Russell v. Birmingham Oxygen Serv., Inc.*, 408 So. 2d 90, 93 (Ala. 1981). This means that a third-party generally lacks standing to sue based on a breach of the contracting parties'

---

[5] Blake does not seek to recover based on promissory estoppel, a theory providing that, "a promise which a promisor should reasonably expect to induce action or forbearance on the part of the promissee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Cantrell v. City Fed. Sav. & Loan Ass'n*, 496 So. 2d 746, 751 (Ala. 1986) (citing *Restatement (Second) of Contracts* § 90(1) (1979)).

agreement. *Id.* Even so, this general rule has an exception: a third party can sue for breach of contract when "the contracting parties intend[ed] that the third person receive a direct benefit enforceable in court." *Id.*; *see also Custer v. Homeside Lending*, 858 So. 2d 233, 248 (Ala. 2003) (requiring third-party beneficiary to show contracting parties intended to bestow direct benefit on her at time contract entered into). "The crucial inquiry involves a determination of intent, and third parties may sue on the contract only if it may be said to have been intended for their direct, as opposed to incidental, benefit." *Ross v. Imperial Constr. Co.*, 572 F.2d 518, 520 (5th Cir. 1978) (applying Alabama law); *see Riegal Fiber Corp. v. Anderson Gin Co.*, 512 F.2d 784, 787–88 (5th Cir. 1975) (same); *United States Pipe & Foundry Co. v. United States Fid. & Guar. Co.*, 505 F.2d 88, 90 (5th Cir. 1974) (same).

Blake's complaint alleges the defendant's securitized her loan and, once they did, her mortgage "became subject to a contract between the Trustee of the special purpose entity (or trust) and its successor and assigns." (Compl. at ¶¶ 43, 44.) This "Pooling and Servicing Agreement," Blake claims, required the mortgage servicer to engage in "'loss mitigation' under their agreement with the Trust to prevent the foreclosure of" her home. (*Id.* at ¶ 45.) To support her claim, she has attached an order from the Circuit Court of Russell County, Alabama, holding that a debtor is an intended third-party beneficiary under a similar PSA. The state circuit court reasoned that the plaintiff-homeowner could not have received financing to buy her home without the PSA entered into by the

11

securitizing trust and the originating bank. (Doc. # 27.)

But the Court is neither persuaded nor bound[6] by the state circuit court's reasoning, especially considering how the mortgage securitization process works. Generally speaking, a borrower (sometimes with the help of a mortgage broker) takes out a loan from a lender and uses the proceeds to purchase a house. The borrower agrees to grant the lender an interest in the home (a mortgage) and to repay the loan according to the terms of a promissory note. The lender then sells the loan to an issuer of a mortgage-backed security. The issuer in turn sells the security—essentially a bundle of mortgages and the corresponding promissory notes bought from lenders—to investors.

Because the investors now have a security interest in the borrowers' homes, as well as the right to collect the monthly payments made by the borrowers, the issuer needs an intermediary to service the loan. So the issuer enters into a PSA with an agent called a loan servicer. Under a typical PSA, the servicer collects the borrower's monthly payments and remits them to a trust set up to hold investors' security interests and make disbursements to them. The PSA also governs how the servicer and the trustee managing the issuer's trust manage defaults by borrowers. Here, Blake is the borrower, BANA the lender, and BAC the servicer. The issuer has not been joined in the lawsuit.

Although Blake claims she is a third party beneficiary of the PSA, she fails to

---

[6] Under Alabama's rules of judicial decision making, "a [state] circuit court case . . . has no precedential authority." *Mitchell v. State Farm Mut. Auto. Ins. Co.*, ___ So. 3d ___, ___, 2011 WL 4790636, at *4 (Ala. Civ. App. Oct. 7, 2011) (quoting *Taylor v. State*, ___ So.3d ___, ___, 2010 WL 3834347, at *10 (Ala. Crim. App. Oct. 1, 2010)).

allege that she received a direct, intended benefit from the agreement. *Cf. Wittenberg v. First Independent Mortg. Co.*, No. 10-CV-58, 2011 WL 1357483, at *22 (N.D. W. Va. April 11, 2011) ("Thus, even assuming the plaintiff has alleged a breach of the PSA, this Court finds that the plaintiff has not sufficiently alleged that she is an intended beneficiary of the PSA."). The Court cannot infer that BAC and the issuer intended to confer a benefit on Blake, for example, by entering into the PSA to induce the lender to extend credit to her.[7] In fact, Blake's complaint alleges that BAC acted as the issuer's agent under the agreement, not Blake's, meaning that the "loss mitigation" provision required BAC to mitigate the issuer's and investor's losses, but not her's. (*See* Doc. # 1-10 ¶ 45 ("Under the provisions of the PSA, the servicer is required to actively engage [in] 'loss mitigation' under their agreement with the Trust to prevent the foreclosure of the property and to provide for income to the trust in the form of payments by the Plaintiff on the mortgage."). In other words, the issuer and BAC intended the PSA to benefit themselves: the loss mitigation provision is designed to reduce the issuer's and investor's agency costs by imposing a contractual duty on a servicer who gets paid for performing. *See* Adam J. Levitin & Tara Twomey, *Mortgage Servicing*, 28 Yale J. on Reg. 1, 31 (2011) ("PSAs require servicers to manage the loans held by the trust as if for their own account."). Thus any benefit Blake could have received under the agreement—like the servicer abstaining from foreclosing on her—is an incidental as

---

[7] Blake received the proceeds of the loan before BANA and BAC entered into the PSA; hence, the purchased money cannot be a direct, intended benefit as the state circuit court's opinion implies.

13

opposed to a direct one. The Court consequently finds that Blake failed to allege sufficient facts to suggest she has standing to invoke the terms of the PSA. As a result, her third-party beneficiary claim is due to be dismissed.

### D. Blake's civil conspiracy claim

Lastly, Blake's fourth count alleges a conspiracy between the defendants "to service mortgage loans either in default or not in default" in a way that "would generate . . . illegal fees." (Doc. # 1-10 at ¶ 49.) Blake contends that this conspiracy caused a false delinquency on her mortgage. BANA and BAC counter by arguing that plaintiffs must plead civil conspiracy claims with particularity and contend that a bald allegation that they "engaged in unlawful conspiracy" does not suffice.

"Alabama recognizes civil conspiracy as a substantive tort." *DGB, LLC v. Hinds*, 55 So. 3d 218, 234 (Ala. 2010) (internal quotations and punctuation omitted). Civil conspiracy is an agreement between two or more people to do something unlawful or something lawful by unlawful means. *Id.* (citing *Purcell Co. v. Spriggs Enters., Inc.*, 431 So. 2d 515, 522 (Ala. 1983)). But "[a] plaintiff alleging a conspiracy must have a valid underlying cause of action." *Id.* (quoting *Drill Parts & Serv. Co. v. Joy Mfg. Co.*, 619 So. 2d 1280 (Ala. 1993)). Accordingly, a civil conspiracy claim fails if the underlying acts do not support a tort claim. *Id.* (citing *Triple J. Cattle, Inc. v. Chambers*, 621 So. 2d 1221, 1225 (Ala. 1993)).

Here, Blake has alleged that the defendants conspired to charge "illegal fees by

14

the assessment of fees and charges to the loan accounts of unsuspecting borrowers and the collection of those sums and distribution of those sums to the members of the conspiracy." But these claims provide neither a basis for the fees' alleged illegality nor sufficient facts to state a valid cause of action for an economic tort like fraud, misrepresentation, or tortious interference. Because a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," and since it does not suffice for the pleadings merely to leave "open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery," *Twombly*, 550 U.S. at 559, 561, Blake has failed to state a claim for civil conspiracy. Consequently, count four is due to be dismissed as well.[8]

## VI. CONCLUSION

Accordingly, it is hereby ORDERED that the defendants' Motion to Dismiss (Doc. # 4) is GRANTED IN PART and DENIED IN PART as follows:

1. The motion is GRANTED as to Blake's request for injunctive relief;

2. The motion is GRANTED as to Count 1 of Blake's complaint, which seeks relief in tort for negligent mortgage servicing, and as to Count 2, which seeks relief in tort for wanton mortgage servicing;

3. The motion is DENIED as to Count 3 to the extent it seeks relief for first party breach of contract, but is GRANTED to the extent it asserts a claim

---

[8] Blake can still recover contract damages for any fees the defendants charged in excess of what the mortgage agreement authorizes. Or if Alabama law makes certain fees illegal and recognizes a tort claim to remedy such a wrong, she can re-file her complaint using that cause of action as either a standalone claim or as the basis for a civil conspiracy claim. As it stands now, the Court has before it a bald claim of illegality without supporting facts or law. This does not suffice.

      based on a third-party beneficiary theory;

4.     The motion is GRANTED as to Count 4, which seeks damages for civil conspiracy.

Done this the 27th day of February, 2012.

                                            /s/ Mark E. Fuller
                                      UNITED STATES DISTRICT JUDGE