IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| SUSAN H. BLAKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:11-cv-242-MEF |
| | ) | |
| BANK OF AMERICA, N.A., *et al.*, | ) | (WO – Do Not Publish) |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Susan Blake ("Plaintiff" or "Blake") filed this action against Defendants

Bank of America, N.A. ("BANA"), Best Interest Rate Mortgage Company, LLC ("Best

Interest"), and BAC Home Loans Servicing, LP ("BAC") (collectively, "Defendants"),

alleging that she was caused to suffer damages as a result of their conduct.  This cause is

before the Court on Defendant BANA's Motion for Summary Judgment.  (Doc. #46).

Having reviewed the briefs of the parties, the evidentiary submissions, and the record as a

whole, the Court finds that Defendant BANA's motion is due to be GRANTED.

## I.  JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1332.[1]  The parties do not contest personal jurisdiction or venue, and the Court finds

---

[1]  This action was original filed in the Circuit Court of Lee County, Alabama.  (Doc.
#1-10.)  Defendants BANA and BAC timely removed this action to federal court on the basis
of diversity jurisdiction.  Best Interest did not join in the removal, as its registered agent
returned service of the Summons and Complaint.  *See Cook v. Bessemer City Bd. of Educ.*,
No. 2:12-cv-1063-RDP, 2012 WL 4813831, at *1, 4 (N.D. Ala. Oct. 4, 2012) ("[A] defendant
need not participate in removal proceedings absent formal service.").  Plaintiff moved to

adequate allegations in support of both.

## II.  STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [her] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate 'specific facts showing that there is a

---

remand on the grounds that the amount in controversy required to establish diversity jurisdiction had not been met.  (Docs. #1, 10.)  Following full briefing by the parties, the Court concluded that it indeed had diversity jurisdiction in this matter, as the removing Defendants had shown by a preponderance of the evidence that complete diversity existed between the parties and that the $75,000 amount in controversy requirement had been met. (Doc. #23.)

genuine issue for trial." *Id.* at 324 (internal quotations omitted).  To avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A plaintiff must present evidence demonstrating that she can establish the basic elements of her claim, *Celotex*, 477 U.S. at 322, because "conclusory allegations without specific supporting facts have no probative value" at the summary judgment stage.  *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).

A court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  After the non-moving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).

### III.  FACTS

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion.  The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following facts:

Plaintiff purchased a home on Kinsley Court in Auburn, Alabama, in 1997 (the "Property") and financed this purchase through Auburn Bank.  (Deposition of Dorothy Snow ("Snow Dep."), Doc. #54-3.)  On October 29, 2005, Plaintiff refinanced her loan by executing a Note in the principal amount of $185,600 in favor of Countrywide Home Loans,

Inc. ("Countrywide").  (Note, Doc. #47-1.)  The Note was secured by a Mortgage on the property in favor of Countrywide. (Mortgage, Doc. #47-2.) BANA assumed Countrywide's assets and liabilities after the two companies merged in or about July 2008, and BANA now services Plaintiff's loan.

Under the terms of the Note, Plaintiff is obligated to repay her loan by making minimum monthly payments of $1,345.73 in principal and interest on the first day of each month, beginning on January 1, 2006, and continuing until December 1, 2035, or until the Note is satisfied. (Doc. #47-1.) Plaintiff admits that her failure to pay this monthly payment in full on the date it is due would be a default of her obligations under the Note.  (Pl.'s Res. to BANA's Req. for Admis., Doc. #47-4, No. 4.)  Moreover, there is no dispute that, in the event of default, the lender may require Plaintiff to pay immediately the full amount of principal and interest owed on the loan and may even invoke its power of sale.  (Doc. #47-1, 2.)  The lender may also charge Plaintiff late fees if the full amount of any monthly payment is not received by the end of fifteen calendar days after the date it is due.  (Doc. #47-1.)

Plaintiff had a history of paying her monthly mortgage late.  By 2008, Plaintiff was having increasing difficulty making her monthly mortgage payments.  As a result, in April 2009, Plaintiff contacted a third party, Best Interest, and paid it a $1,500 fee to attempt to negotiate a loan modification with BANA on her behalf.  Plaintiff completed the paperwork provided by Best Interest, and Best Interest provided that paperwork to BANA.  Best Interest told Plaintiff not to contact or make her monthly mortgage payments to BANA because that would expedite the loan modification process.  Plaintiff complied and stopped making

4

regular monthly mortgage payments to BANA in April 2009.[2]  (Snow Dep., Doc. #47-3.)

     From May 2009 through March 2010, Plaintiff did not make any monthly mortgage payments to BANA.  In or about October or November 2009, Plaintiff claims that she was informed by Best Interest that her loan modification was approved and that she would be receiving paperwork from BANA to sign to complete the process by the end of the year. This conversation with Best Interest was the only time anyone told Plaintiff that a loan modification had been approved.  (Snow Dep., Doc. #47-3.)

     In January 2010, when Plaintiff had not received any paperwork, she called BANA and was told that they were behind on processing loan modifications and that she should check back later.  BANA did not tell Plaintiff that she had been approved for a loan modification at that time or at any other time.  In fact, Plaintiff testified that BANA never agreed to modify her loan.  (Snow Dep., Doc. #47-3, at 102:4–5.)

     On March 1, 2010, Plaintiff spoke with a BANA employee,[3] whom she claims told

---

[2] Plaintiff ceased making her loan payments to BANA at Best Interest's instruction, despite the fact that the agreement she signed with Best Interest expressly states: "The negotiation of a loan modification does not excuse you from making your regularly scheduled mortgage payments."  (Best Interest Agreement, Doc. #47-5.)  Plaintiff does not contend that a representative from BANA ever advised her to stop making her monthly mortgage payments.  Nevertheless, Plaintiff has not made a regular monthly mortgage payment to BANA in the amount set by the Note ($1,345.73) since April 2009. (Snow Dep., Doc. #47-3.)

[3] There is some confusion as to the individual with whom Plaintiff spoke at BANA on March 1, 2010.  Plaintiff testified that the individual was a "black lady," but BANA's corporate representative testified that Plaintiff actually spoke to Victor Montano.  (Snow. Dep. Doc. #54-3, at 103:1–8; Deposition of Diane Deloney ("Deloney Dep."), Doc. #54-4, at 21:11–21.)  Nevertheless, while the identify of this individual may be unclear, it is

5

her that she needed to make at least three "trial" payments in the amount of $991.69 until her modification paperwork was complete.[4] Plaintiff does not know the basis for the $991.69 amount, which is substantially less than the monthly mortgage payment required under her Note. During this conversation, Plaintiff did not discuss with BANA any terms of a loan modification. Plaintiff also never received anything in writing or signed anything from BANA regarding this trial payment, and she never received any paperwork from BANA stating that it would modify her loan to this payment amount. (Snow Dep., Doc. #47-3.)

Beginning in April 2010, Plaintiff made a payment to BANA in the amount of $991.69, and made five more payments in this amount through October 2010. From that point forward, Plaintiff has not made any full or partial mortgage payments to BANA. Plaintiff stopped making the $991.69 "trial" payments in November 2010, after she learned that BANA did not consider them to be valid "trial" payments. (Snow Dep., Doc. #47-3.) BANA aggregated the $991.69 payments and applied them to the outstanding amount Plaintiff owed once they totaled a full payment. Under the Mortgage, BANA was not required to apply a partial payment at the time it was accepted. (Doc. #47-2.) The Mortgage also permits BANA to hold unapplied funds until Plaintiff makes a payment sufficient to bring the loan current. (Doc. #47-2.)

---

immaterial for purposes of this opinion.

[4] In the Complaint, Plaintiff alleges she was told by BANA that after she made these "trial" payments for three months, her loan would be "refinanced" at that amount. (Compl. ¶ 18.)

By letter dated March 8, 2010, BANA informed Plaintiff that she could apply for a loan modification under the Home Affordable Modification Program ("HAMP").  In June 2010, BANA again informed Plaintiff that she could apply for a loan modification under HAMP.  Plaintiff applied for a loan modification through BANA in June 2010.  On January 7, 2011, Plaintiff was sent written notification from BANA that she was not eligible for a loan modification.  Plaintiff has not made any full or partial mortgage payments to BANA since October 2010, despite knowing that she has not been approved for a modification of her loan with BANA or any other entity.  Plaintiff still lives at the Property.  (Snow Dep., Doc. #47-3.)

## IV. DISCUSSION

Plaintiff filed suit against BANA, Best Interest, and BAC, alleging claims for negligent mortgage servicing, wanton mortgage servicing, breach of contract, and civil conspiracy.  Best Interest has not appeared in this action.[5]  Moreover, as of July 1, 2011, BAC merged with and into BANA.  Thus, BANA is the sole defendant left in these proceedings.

On April 7, 2011, BANA moved to dismiss Plaintiff's Complaint under Rule 12(b)(6).[6]  On February 27, 2011, after full briefing by the parties, the Court granted

---

[5] In any event, Plaintiff's only claim against Best Interest was dismissed by Order of this Court on February 27, 2011.  (Doc. #33.)

[6] This Motion to Dismiss was also filed on behalf of BAC, as it predates BAC's merger into BANA.

BANA's motion to dismiss as to all of Plaintiff's claims except for first-party breach of contract.[7] (Doc. #33.) As such, the Court's only task is to determine whether Plaintiff's breach of contract claim passes muster at the summary judgment stage. For the reasons set forth below, the Court finds that it does not.

## A.    Plaintiff's Breach of Contract Claim

### 1.    Loan Modification

Plaintiff bases her breach of contract claim on BANA's breach of a "contract to modify the Plaintiff's loan." (Doc. #54, at 6.) However, the most basic element of any breach of contract claim is "the existence of a *valid contract* binding the parties in the action." *S. Med. Health Sys., Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995) (emphasis added).[8] This would require Plaintiff to show an offer, acceptance, valid consideration, and mutual assent to the essential terms of the agreement. *Armstrong Bus. Servs. v. AmSouth Bank*, 817 So. 2d 665, 673 (Ala. 2001). Plaintiff has failed to make such a showing here.

Plaintiff admittedly does not contend that BANA ever agreed to modify her loan. (Snow Dep., Doc. #47-3, at 102:4–5.) The undisputed evidence further shows that Plaintiff never discussed the specific terms of a loan modification with BANA, such as the interest rate, the principal balance, the loan term, prepayment penalties, or a possible balloon

---

[7]  The Court reasoned that, when taking the allegations of Plaintiff's Complaint as true, which it must at the summary judgment stage, "it is reasonable to infer that the parties memorialized the loan modification agreement in a writing that satisfies Alabama's Statute of Frauds." (Doc. #33.)

[8]  The substantive law of Alabama governs this lawsuit.

8

payment.  (Snow Dep., Doc. #47-3.)  Plaintiff did not receive any paperwork from BANA that discussed modification terms or indicated that a modification of her loan had been agreed to or approved by BANA.  Plaintiff never signed any loan modification paperwork from BANA.  There is no evidence in the record showing any communication between Plaintiff and BANA wherein BANA agreed to refinance Plaintiff's loan at $991.69 per month if she made certain "trial" payments.[9]  (Snow Dep., Doc. #47-3.)

If anything, the evidence in the record establishes that BANA clearly informed Plaintiff that she had not been approved for a loan modification.  (Snow Dep., Doc. #47-3.) Plaintiff admitted to receiving BANA's January 7, 2011, letter informing her that she was not eligible for a loan modification and that her request had been denied.  (Snow Dep., Doc. #47-3.)  Further, when asked whether she was "contending that anyone with the bank told you . . . that you were approved for a modification," Plaintiff testified: "No.  They told me that I needed to make a payment.  That it had been several months since I had made a payment and for me to pay 991.69, until the paperwork was completed.  It would be like a

_____

[9]  Plaintiff claims in her opposition brief that "[t]he Defendant through Victor Montano represented to the Plaintiff that if she would make payments of $991.69 for three months, her loan would be modified."  (Doc. #54, at 6.)  Plaintiff cites page 103 of her deposition to support this statement.  However, in reviewing Plaintiff's deposition, it is clear that what she actually said was: "A black lady. . . She said, if you want to keep your house, you've got to make a payment.  And she said to pay 991.69, until the paperwork was completed.  This would be like a trial payment.  And if you can make this for three months, then, they'll know that you can make that payment."  (Snow Dep., Doc. #54-3, at 103:1–6.) Nowhere on page 103 of Plaintiff's deposition, or, for that matter, anywhere else in Plaintiff's deposition excerpts submitted to the Court, does Plaintiff testify that BANA told her that her loan would be refinanced or modified if she made the $991.69 trial payments.

[trial] payment.  And that's what I did."  (Snow Dep., Doc. #47-3, at 101:10–15.)

Based on the foregoing, the Court can reach only one conclusion – that Plaintiff cannot establish the essential elements of her breach of contract claim.  There is no evidence of an offer and acceptance.  In fact, Plaintiff testified that no one from BANA ever told her that her loan modification request had been approved.  (Snow Dep., Doc. #47-3.)  There is similarly no evidence of mutual assent between the parties as to the terms of the alleged modification, as Plaintiff never discussed with BANA the specific and material terms of a loan modification beyond the $991.69 "trial" payment. *See Elmore, Quillian & Co. v. Parish Bros.*, 54 So. 203, 204 (Ala. 1911) ("[A]n agreement to enter into an agreement upon terms to be afterwards settled between the parties, is a contradiction in terms, and amounts to nothing.").  Because Plaintiff has failed to prove that she had a valid, binding contract to modify her loan with BANA, or that there is a genuine issue of material fact as to whether such a contract exists, summary judgment is due to be GRANTED in favor of BANA on Plaintiff's breach of contract claim.

While this ruling completely disposes of Plaintiff's sole claim, the Court feels it necessary to address the applicability of Alabama's Statute of Frauds.  Knowing that she cannot establish the existence of a binding written contract with BANA, Plaintiff purports to base her breach of contract claim on BANA's alleged breach of an "oral contract to modify the Plaintiff's loan."  (Doc. #54, at 6.)  However, even if the evidence did establish that such a valid, binding oral contract exists between Plaintiff and BANA (and it does not), this contract would still be unenforceable as a matter of law because it violates Alabama's

10

Statute of Frauds.  Section 8-9-2(7) of the Alabama Code provides: "Every agreement or commitment to lend money, delay or forebear repayment thereof or to *modify* the provisions of such an agreement or commitment" must be "in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing." By Plaintiff's own admissions, the agreement purportedly breached by BANA in this case was one to "modify the provisions" of her previous loan agreement.  Thus, to satisfy the Statute of Frauds, Plaintiff would have to produce evidence of a writing memorializing her loan modification agreement with BANA, which she has failed to do.  *See DeVenney v. Hill*, 918 So. 2d 106, 115 (Ala. 2005).

Here, the record is completely void of any written agreement between Plaintiff and BANA to modify her loan.  While Plaintiff claims that BANA's customer service notes confirming that she was to make "trial" payments of $991.69 establish such a writing, the actual notes were not submitted as evidence to the Court, and even if they were, the Court does not find merit in this argument.  Indeed, based on evidence that *is* before the Court, these notes would presumably reflect Plaintiff's agreement to pay a $991.69 "trial" amount and BANA's agreement to accept this amount.  These notes would not reflect the essential and material terms of a loan modification, such as the interest rate or the loan term, as Plaintiff admittedly did not discuss these types of details with BANA;[10] thus, BANA's

_____

[10]  Although a copy of BANA's internal customer service notes are not before the Court, the contents of these notes were discussed with Diane Deloney ("Ms. Deloney"), BANA's corporate representative, during her deposition.  During Ms. Deloney's deposition, she is questioned about some notes input by a BANA employee on March 1, 2010.  (Deloney

customer service notes would fall short of the type of "writing" contemplated under the Statute of Frauds. *See Faustak's Tire Center, Inc. v. Blanchard*, 959 So. 2d 1132, 1138 (Ala. Civ. App. 2006) ("Although a writing relied on to satisfy the Statute of Frauds need not be a complete contract, it must contain the essential terms of the alleged contract, 'namely, an offer and an acceptance, consideration, and mutual assent to the essential terms of the agreement.'" (quoting *Davis v. Barnfield*, 833 So. 2d 58, 62 (Ala. Civ. App. 2002))).

Plaintiff's additional arguments against the application of the Statute of Frauds are equally baseless. First, Plaintiff claims that the Statute of Frauds would not bar her breach of contract claim because her performance was complete in less than a year. More specifically, Plaintiff argues that she completed paying her $991.69 "trial" payments, and therefore, her loan should have been modified, in less than a year. Although it is true that Alabama's Statute of Frauds generally does not apply to contracts that can be completed in less than a year, *see* Ala. Code § 8-9-2(1), this exception does not apply to Plaintiff's case. BANA claims: "It is illogical conceptually to argue that performance was completed as to a loan modification as soon as the agreement to modify was reached. Plaintiff is conflating the alleged consummation of an agreement with completion of performance." (Doc. #56, at

---

Dep., Doc. #54-4.) Specifically, Ms. Deloney is asked: "There's a note that I'll read, just so we can make sure we're on the same note, that says WOM is locked with MHA offer and trial payments in the amount of 991.69. HO needs to make trial payments. What does that mean?" (Deloney Doc., Doc. #54-4, at 21:22–22:4.) Ms. Deloney responds: "That means that we agree to take trial payments of the 991.69, that the homeowner needs to continue to make the trial payments." (Deloney Dep., Doc. #54-4, 22:5–8.) This is the extent of detail given to the Court with respect to BANA's customer service notes and is the basis for the Court's above presumption as to their content.

2.) The Court agrees. Plaintiff signed a Note and 30-year Mortgage. Thus, her performance, whether under the original Note and Mortgage, or a modification to them, could not have been performed in less than a year.

Plaintiff's second argument that her modification agreement with BANA was an executed, rather than executory, contract and, therefore, not subject to the Statute of Frauds is also flawed. Again, Plaintiff contends that she completed her performance under the contract when she made certain trial payments and, in doing so, rendered the contract an executed one. However, as noted above, Plaintiff's performance was not fully complete when she made her trial payments; rather, her performance, whether under the purported modification or the original Note and Mortgage, would be complete only when she paid the Note in full. Thus, the executed versus executory distinction is nothing more than a red herring that does not salvage Plaintiff's breach of contract claim.

Finally, Plaintiff cannot rely on her argument that BANA should be estopped from asserting the Statute of Frauds as an affirmative defense based on purported fraudulent representations made by BANA in the formation of the modification contract.[11]   Even assuming, *arguendo*, that a modification contract exists, there is absolutely no evidence

---

[11] To the extent Plaintiff attempts to assert or resurrect any direct fraud claims against BANA in her opposition, rather than use such an argument in an attempt to estop BANA from asserting the statute of frauds as an affirmative defense, such a claim is not permitted at this stage of the proceedings. *See also Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (holding that new claims cannot be raised at the summary judgment stage; "A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

suggesting that BANA made any misrepresentations to Plaintiff during its formation or in connection with it.

In sum, even if Plaintiff could prove that she had a valid, binding oral contract with BANA to modify her loan, this contract would still be unenforceable as a matter of law because it does not satisfy Alabama's Statute of Frauds or fall within any of the exceptions to it.

### 2.    The Original Note and Mortgage

To the extent Plaintiff's remaining breach of contract claim is based on BANA's alleged breach of the original Note and Mortgage, as opposed to a loan modification agreement, this claim similarly fails.  Plaintiff alleges that BANA assessed her "illegal, unauthorized, or improper" charges.  (Snow Dep., Doc. #47-3.)  It appears that this contention stems from Plaintiff's belief that BANA did not apply her $991.69 partial payments properly.  Plaintiff, however, has produced no evidence to support this contention.  Indeed, when asked "are you contending that there was an improper fee, or charge, on your account," Plaintiff replied:

> Well, for example, when we [sic] they told me to pay the 991.69, sometimes it was applied, sometimes it wasn't.  Sometimes it had, like, a partial payment on there.  And it was rather ambiguous when I – they told me to pay that.  *How it was applied.  I didn't ever know if it was going to the principal, or the interest, or both, or what.  It just showed partial payment.*

(Snow Dep., Doc. #47-3, at 42:9–17) (emphasis added).  Plaintiff further testified, when asked if she was aware of any illegal or unauthorized charges by BANA that caused a default of her loan, "I don't know how they applied the monies I gave them.  It's a mystery.  So, I

don't know what they did.  But I feel like I was taken advantage of."  (Snow Dep., Doc. #47-3, at 134:14–18.)  Plaintiff's apparent lack of understanding as to how her $991.69 partial payments were applied to her account is not sufficient evidence that BANA was assessing her illegal, unauthorized, or improper charges in breach of the law.

Plaintiff does not contend that BANA never applied her $991.69 partial payments to her account.  Indeed, the evidence shows that BANA aggregated Plaintiff's partial payments until they constituted a full payment and then applied them to her outstanding balance.  Contrary to Plaintiff's assertions, this was permissible under the terms of the Mortgage.  (Doc. #47-2, at ¶ 2.)  Accordingly, because Plaintiff has failed to prove that BANA breached the original Note or Mortgage, or that there is a genuine issue of material fact as to whether such a breached occurred, summary judgment is due to be GRANTED in favor of BANA on Plaintiff's breach of contract claim to the extent it is based on the breach of the original Note and Mortgage.

### 3.  HAMP Violations

Finally, to the extent Plaintiff's breach of contract claim is based on an alleged violation of HAMP in connection with the modification process, such a claim fails as a matter of law.  The Eleventh Circuit has clearly held that no private right of action exists under HAMP and that alleged HAMP violations cannot form the basis of an actionable breach of contract claim.  *See Miller v. Chase Home Finance, LLC*, 677 F.3d 1113, 1116–17 (11th Cir. 2012).

## VII.  CONCLUSION

Accordingly, for the reasons stated above, it is hereby ORDERED as follows:

1.      Defendant Bank of America, N.A.'s Motion for Summary Judgment (Doc. #46) is GRANTED.

2.      The sole remaining breach of contract claim asserted by Plaintiff Susan H. Blake against Defendant BANA is dismissed with prejudice because there are no genuine issues of material fact and Defendant BANA is entitled to a judgment in its favor as to this claim.

3.      All remaining deadlines and hearings in this matter, including the January 28, 2013 trial, are TERMINATED.

Because this Opinion and Order resolves all claims in this action, the Clerk of Court is DIRECTED to close this file.  A separate final judgment will be entered.

DONE this the 17th day of January, 2013.

                                              _____/s/ Mark E. Fuller_____
                                           UNITED STATES DISTRICT JUDGE